BALES, C.J.,
dissenting in part and concurring in the result.
¶ 37 The Glazers have never argued that the 1967 construction plan was deficient for not including median barriers for this particular stretch of the I—10 highway. Instead, they contended, and the jury agreed, that the State breached its long-established duty to keep its highways reasonably safe by not installing barriers, or taking other safety measures, in light of dramatic changes in the highway’s usage in the last forty years. Throughout this litigation, the State has asserted that A.R.S. § 12-820.03 allows it to ignore these changes and escape liability for the highway’s dangerous condition merely because median barriers were not required in 1967. This interpretation would effectively eliminate the State’s duty to keep its highways reasonably safe for travel.
¶ 38 I respectfully disagree with the majority’s conclusion, ¶¶ 13-27, that § 12-820.03 applies to the Glazers’ negligence claim. But I agree that, if the statute does apply, the State was not entitled to prevail as a matter of law. Given the jury’s determination that the conditions were unreasonably dangerous in 2007, the State would only have been entitled to the affirmative defense if it had shown that it had provided adequate warnings. See ¶ 31. The State never even attempted to make such a showing.
¶ 39 Our interpretation of § 12-820.03 should be guided by several background principles. First, we have recognized for more than ninety years that the State has a duty to keep its highways reasonably safe for travel. See, e.g., Dunham v. Pima County, 161 Ariz. 304, 306, 778 P.2d 1200, 1202 (1989); City of Phoenix, v. Clem, 28 Ariz. 315, 327, 237 P. 168, 172 (1925). As the majority acknowledges, ¶ 13, this duty is not eliminated by § 12-820.03, which provides an affirmative defense only in specified circumstances. We should construe the statute narrowly, see Doe ex rel. Doe v. State, 200 Ariz. 174, 176 ¶ 4, 24 P.3d 1269, 1271 (2001), and attempt to give effect to each of its words, such that “no clause, sentence or word is rendered superfluous, void, contradictory or insignificant.” Bilke v. State, 206 Ariz. 462, 464 ¶ 11, 80 P.3d 269, 271 (2003).
¶ 40 Section 12-820.03 applies to “an injury arising out of a plan or design for construction or maintenance of or improvement to” a highway “if the plan or design is prepared in conformance with generally accepted engineering or design standards in effect at the time of the preparation of the plan or design.” “Maintenance” means “the establishment or continuation in existence of’ a highway, but “does not mean or refer to ordinary *169 repair or upkeep.” A.R.S. § 12-820(4). Because the statute recognizes that injuries may arise from plans for maintenance or improvement as distinct from plans for construction, it is inappropriate to conclude that an injury is one “arising out of’ a plan of construction merely because the injury relates to existing highway conditions.
¶ 41 I would hold that an injury arises out of a plan for construction only if the dangerous condition causing the injury is inherent in the plan itself. If the 1967 design had contemplated the current conditions (particularly traffic speed and volume) and had, consistent with 1967 standards, omitted median barriers, I would agree that § 12-820.03 might apply. A “plan or design for construction” necessarily makes certain assumptions about a highway’s usage. If a design was “state of the art” when prepared for those conditions, the State should be able to use the defense if design standards later change. But a “state of the art” defense should not apply when the highway is being used in substantially different conditions than for which it was designed. (When conditions have changed, the State might seek to invoke the affirmative defense by arguing that its plans for the highway’s maintenance or improvement conform to generally accepted standards; the State made no such argument here.)
¶ 42 The evidence, when viewed in favor of sustaining the jury’s verdict, showed that the injuries to the Glazers did not result from any dangerous condition inherent in the 1967 design. If the highway had continued in existence under conditions contemplated when it was designed and constructed, the particular segment would not have been dangerously unsafe even though median barriers were lacking. Conditions, however, changed in ways that were not contemplated by the 1967 plan. Traffic volume increased to about 55,000 vehicles daily, more than three times the number the plan had projected for 1997. Speed limits were raised to 75 miles per hour. The risks posed by these changes are greater because on this particular stretch of highway, the median is hard-pack and, unlike soft sand or rocks, is easily traversable. An out-of-control vehicle can cross the median in seconds, leaving no time for a driver traveling the opposite way to take evasive action.
¶ 43 This combination of circumstances— not any defect inherent in the 1967 construction plan — has resulted in crossover accidents occurring on this stretch of highway at a rate some twenty-nine times higher than the statewide average. The Glazers presented evidence that if the State had followed its own guidelines, it would have monitored the incidence of cross-over accidents (ten occurred, resulting in six deaths, between 2003 and 2007). If the State had done so, reasonable engineering standards would have required installation of median barriers by 2000 or 2001. Had such barriers been in place when the driver in this case lost control in heavy traffic, the vehicle would not have shot across the median and crashed into the Glazers’ northbound vehicle, killing two people and injuring another. The State, however, made no significant changes to this portion of the highway over forty years.
¶ 44 Having heard this evidence, the jury was instructed, without objection, that:
The State has a duty to keep its highways reasonably safe for travel. That duty includes the duty to place proper barriers, railings, guards, and/or warning signs at dangerous places on a highway when necessary for travelers’ safety.
The mere fact that an accident occurred does not compel the conclusion that a condition was unreasonably dangerous.
The jury found that the State had breached its duty by allowing an unreasonably dangerous condition to exist and that its negligence caused injury to the Glazers. The State has not challenged these findings on appeal.
¶ 45 The majority, unfortunately, accepts the State’s argument that A.R.S. § 12-820.03 generally applies “even if material changes to travel have rendered the roadway substandard,” ¶ 1, and that the statute applies to the Glazers’ claim because median barriers were not included in the 1967 plan. ¶ 16. The majority’s holding allows the State to assert the statutory defense merely because the original plan for construction was silent about improvements that might be needed to ensure safe travel under current — and substantially different — conditions. That the *170 1967 plan omitted median barriers is not a sufficient reason, in my view, to conclude that the Glazers’ 2007 injuries were ones “arising out of’ that plan. The majority’s contrary view effectively replaces the State’s duty to keep its highways reasonably safe with a duty to warn the public that highways have become unreasonably dangerous.
¶ 46 Section 12-820.03 does not apply here because the 2007 injuries did not result from any defect inherent in the 1967 construction plan, but instead from the dramatically changed conditions on the I—10 highway. But if the injuries were ones “arising out of’ the 1967 plan, the State was not entitled to judgment as a matter of law because the conditions were unreasonably dangerous and the State did not provide reasonably adequate warnings. These conclusions comport with the jury’s findings, the language of A.R.S. § 12-820.03, and our ninety-year recognition of the State’s duty to keep its highways reasonably safe for travel. I concur in affirming the trial court’s judgment.